**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 08-CR-70-GKF |
| ) | |
| MICHAEL LEON JAMESON, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Before the court is defendant Michael Leon Jameson's ("Jameson") Motion to Vacate, Set Aside or Correct Sentence [Dkt. #59]. Plaintiff United States of America ("United States") objects to the motion.

**I. Background/Procedural Status**

On April 8, 2008, a one-count indictment charged Jameson with possession of child pornography. [Dkt. #2]. Jameson retained Mark Lyons to represent him in the case. [Dkt. #4]. Lyons represented Jameson at a suppression hearing and his change of plea hearing. After those hearings, Lyons withdrew as counsel and on August 11, 2008, Jameson retained Stephen Jones and Robert Wyatt to represent him. [Dkt. ##30, 31]. Jameson pleaded guilty to the indictment pursuant to a plea agreement with the government. [Dkt. #22]. Jones and Wyatt represented Jameson through his November 7, 2008 sentencing. After he was sentenced, Jameson retained Stan Monroe to represent him on direct appeal.

In § 3 of the plea agreement, Jameson "knowingly and voluntarily" agreed:

1

a. The defendant waives the right to directly appeal the conviction and sentence pursuant to 28 U.S.C. § 1291 and/or 18 U.S.C. § 3742(a); and
b. The defendant reserves the right to appeal from a sentence which exceeds the statutory maximum; and
c. The defendant specifically reserves the right to appeal the court's ruling on the issue raised in his motion to suppress. (Doc. 8)
d. The defendant expressly acknowledges and agrees that the United States reserves all rights to appeal the defendant's sentence as set forth in 18 U.S.C. § 3742(b), and *U.S. v. Booker,* 543 U.S. 220 (2005); and
e. The defendant waives the right to collaterally attack the conviction and sentence pursuant to 28 U.S.C. § 2255, except for claims based on ineffective assistance of counsel which challenge the validity of the guilty plea or this waiver; and
f. The defendant waives the right to have the sentence modified pursuant to 18 U.S.C. § 3582(c), except for a rule 35(b) motion filed by the government; and

The defendant expressly acknowledges that counsel has explained his appellate and post-conviction rights; that defendant understands his rights; and that defendant knowingly and voluntarily waives those rights as set forth above, with the exception of the issue for which he has reserved his right to appeal.

[*Id.,* § 3]. Jameson signed § 3 of the plea agreement.

Jameson also signed the Petition to Enter Plea of Guilty [Dkt. #21]. In the petition, he acknowledged his understanding that in pleading guilty, he would waive his Sixth Amendment rights to a jury trial in all respects, both as to guilt or innocence and as to sentencing. [*Id.* at 1-2]. He also stated his attorney had advised him his guilty plea could subject him to a maximum punishment of 10 years imprisonment and/or a fine of $250,000 and that he would be sentenced pursuant to the advisory sentencing guidelines procedure established by 18 U.S.C. § 3553 *et seq.* [*Id.* at 3-4]. He stated he understood that sentencing is a matter left exclusively in the province of the court and the sentence imposed by the court may be within the guideline table range provided by law, or for good cause stated the court may depart therefrom or may impose a non-guideline sentence. [*Id.* at 4].

At the change of plea hearing on July 2, 2008, the court placed Jameson under oath [Dkt. #34 at 5], and asked him if he was fully satisfied with the advice, representation and counsel

given to him by Lyons, to which Jameson responded affirmatively [*Id.* at 8]. The court inquired whether Jameson had been given an opportunity to read and discuss the plea agreement with Lyons before he signed it, to which Jameson responded, "Yes I did." [*Id.* at 9]. Jameson testified that he understood the terms of the plea agreement, that the terms had been stated accurately on the record by Lyons, and that nobody had made any other or different promise or assurance to him of any kind in an effort to induce him to plead guilty in the case. [*Id.*]. The court explained that the maximum sentence was 10 years imprisonment and a fine not more than $250,000, and supervised release for a minimum of five years and a maximum of life. [*Id.* at10-11]. He told the court his attorney had discussed with him the advisory sentencing guidelines that might apply in his case, and that he understood the sentence imposed may be different from any estimate that Lyons had given him. [*Id.* at 12].

Concerning appeal rights, Jameson testified as follows:

COURT: Do you understand that under some circumstances you or the government may have the right to appeal any sentence that I impose?

DEFENDANT: Yes, sir.

COURT: All right, under the terms of your plea agreement on page 3 you have reserved the right to appeal the decision made by the Court on the motion to suppress. Do you understand that?

DEFENDANT: Yes, sir.

COURT: Do you understand that you've also, under the terms of this plea agreement, waived the right to directly appeal the conviction and sentence other than reserving your right to appeal the ruling on the motion to suppress?

DEFENDANT: Yes, sir.

COURT: Do you understand that you have reserved the right to appeal from a sentence which exceeds the statutory maximum. Well, I can assure you that's not going to happen but you understand you have reserved that right?

DEFENDANT: Yes, sir.

> COURT: You understand that the United States reserves all of its rights to appeal?
>
> DEFENDANT: Yes, sir.
>
> COURT: Do you understand that you have waived under this plea agreement the right to collaterally attack the conviction and sentence except for claims based on ineffective assistance of counsel that challenge the validity of your guilty plea or this waiver?
>
> DEFENDANT: Yes, sir.
>
> COURT: All right, and do you understand that under this plea agreement you've waived the right to have your sentence modified pursuant to Title 18, United States Code Section 3582(c). In other words these are post sentence or post conviction sentence modifications. Do you understand under the plea agreement you are waiving that right to have your sentence modified?
>
> DEFENDANT: Yes, sir.

[*Id.* at 14-15].

He testified that he understood the charge against him, and the consequences of his waiver of his right to a jury trial and other related rights. [*Id.* at 10, 15-16]. He executed a written waiver of his right to a jury trial. [*Id.* at 18-19].

After the court set forth the elements of the offense, Jameson described the factual basis for his plea of guilty. [*Id.* at 26]. Counsel for the government described the facts it was prepared to show at trial. [*Id.* at 27-29]. Jameson pleaded guilty and affirmed that his plea and the waivers of his rights were made voluntarily and completely of his own free choice, free from any forces or threats or pressures from anyone and that he was not relying upon any representations or promises either expressed or implied which were not clearly and specifically stated in the written plea agreement. [*Id.* at 29]. The court then accepted the guilty plea. [*Id.* at 29-30].

Prior to sentencing, Lyons withdrew from representing Jameson and Stephen Jones and Robert L. Wyatt, IV, entered their appearances as retained counsel. [Dkt. ##26, 30, 32]. The

Presentence Report ("PSR") stated Jameson possessed a total of 838 images of child pornography, resulting in a five-level increase to Jameson's offense level, and a guideline range of 97 to 120 months. [PSR at ¶20]. The PSR used the 2007 version of the Sentencing Guidelines in determining his advisory guideline range. [*Id.,* ¶14]. Defense counsel objected to the number of images used to calculate Jameson's offense level, arguing that they were beyond the scope of the plea agreement and indictment. [PSR Addendum at 2]. In addition, defense counsel filed a motion for a sentencing departure/variance and a sentencing memorandum and mitigation presentation [Dkt. ##42-43]. In the variance motion, they argued that any guideline sentence of imprisonment would be greater than necessary to comply with the purposes of 18 U.S.C. § 3553(a)(2). Dkt. #42 at 8-10].

Defendant's sentencing occurred November 7, 2008 [Dkt. #44]. At sentencing, the court sustained Jameson's objection to the number of images used in the guideline calculations, based on the stipulation in the plea agreement. [Dkt. #52, Transcript of Sentencing at 3-8, 10]. This resulted in a reduction of Jameson's total offense level to 27, resulting in an advisory guideline range of 70 to 87 months. [*Id.* at 13]. Wyatt, on behalf of Jameson, argued that although the guidelines provided for a minimum sentence of 27 months for an offender with no enhancements, the minimum statutory sentence was zero. [*Id.* at 14]. He presented numerous grounds for variance, pointing out that Jameson had been behind bars for 124 days since his change of plea, and thus already been punished. [*Id.* at 14-15]. He asserted that, for the rest of his life, he would be labeled as a felon and face limitations attached to that. [*Id.* at 15]. He would be required to register as a sex offender. [*Id.* at 16-17]. Wyatt argued that Jameson would be unable to obtain sex offender treatment while in prison because the Bureau of Prisons has limited treatment facilities for sex offenders and the waiting list for those facilities is extremely

5

long. [*Id.* at 19]. He pointed out Jameson was financially capable of seeking treatment outside of the prison system. [*Id.* at 19-20]. Wyatt reminded the court that Jameson owned a business with approximately 40 employees and, without his leadership, the business would suffer and jobs would be lost. [*Id.* at 21]. Wyatt argued Jameson as a "prime candidate" for either "some type of split term" or "straight probation." [*Id.* at 23].

The court denied defendant's motion for variance. [*Id.* at 38]. Attorney Stephen Jones then urged the court to show mercy in sentencing Jameson [*id.* at 39-42], and the court gave Jameson the opportunity to speak on his own behalf. [*Id.* at 42]. Jameson stated:

> Your honor, I can't begin to tell you of the remorse I feel for the innocent, young blessed people I've harmed and for the suffering I've caused my family, loved ones, valued friends and colleagues through this tragedy. This especially includes my dear mother who always taught me the difference between right and wrong. To say I am embarrassed, ashamed and humiliated is the understatement of my life. C.S. Lewis said evil is a parasite. I've done my very best to meet that parasite head on with spiritual renewal, personal growth and intensive study. In spite of my environment the last 124 days I've learned plenty, encountering crucial life lessons in my darkest hour. Needless to say, I am open to any therapy or assistance in the future, as my greatest desire is to lead a moral and virtuous lifestyle and restore my reputation to that level.
>
> Every bit of the message intended by incarceration has delivered the strongest deterrent against any possibility of a repeat offense. From death threats, to loss of freedoms, to separation from those I love, to sheer terror. All have hit the mark that a dagger, like a dagger through the heart. In 2004 George W. Bush described America as the nation of second chances. I would give anything to have my life back. Sir, I humbly beg you for your grace and compassion. Please let me go home with my family today. Please let me go back to work. Please give me the opportunity to restore the damage I've done and to redeem myself in the eyes of everyone who knows me. All I need is one chance to make you proud of your decision and to know it was the right one. I pray for your forgiveness, grace divine mercy as exemplified by Saint Maria Faustina, so I can redeem myself through actions and behaviors that speak louder than any words ever could. Thank you.

[*Id.* at 42-43].

The court then sentenced Jameson to a 70-month term of imprisonment followed by a 12-year term of supervised release, and a guideline fine of $25,000. [*Id.* at 45-46].

On direct appeal, Jameson appealed this court's denial of his motion to suppress. The Tenth Circuit affirmed the denial and Jameson's conviction. [Dkt. #57]. Subsequently, Jameson filed the pending motion.

## II. Defendant's 28 U.S.C. § 2255 Motion

Jameson brings the present motion pursuant to 28 U.S.C. § 2255(a), which states:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed [1] in violation of the Constitution or laws of the United States, or that [2] the court was without jurisdiction to impose such sentence, or that [3] the sentence was in excess of the maximum authorized by law, [4] or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Jameson asserts he is entitled to relief sought pursuant to § 2255 on the following grounds:

1. At the sentencing hearing, the court violated his allocution rights by imposing sentence before allowing him to speak.

2. His sentence under U.S.S.G. § 2G2.2 was far "greater than necessary."

3. His pretrial/pre-sentencing counsel, Mark Lyons, was ineffective for failing to challenge his sentence under U.S.S.G. § 2G2.2.

4. His sentencing counsel, Stephen Jones, was ineffective for failing to challenge his sentence under U.S.S.G. § 2G2.2.

5. Lyons was ineffective for failing to object to Jameson being placed in custody before sentencing.

6. Enhancements to his guideline level were "without merit."

7. Changes to the guidelines effective November 1, 2010, should have resulted in a sentence of probation.

8. Supervised release, fine and "virtually all other aspects of sentencing order are nothing more than a 'mushrooming' effect, proportionally skewed upward as a direct influence of flawed Guideline 2G2.2, and are excessive and inappropriately punitive."

9. Conviction was obtained by a plea of guilty which was unlawfully induced by Lyons, who told him to sign the plea agreement without reading it.

10. Ineffective assistance of counsel by Lyons for:

    a. Failing to challenge the prosecutor's late response to his motion to suppress;
    b. Failing to discuss the applicable sentencing guidelines with Jameson;
    c. Failing to introduce evidence from Jameson's counseling at Laureate Psychiatric Hospital;
    d. Failing to attend an interview with law enforcement agents about potential substantial assistance based on Jameson's information about "'knowing violations' of EPA and OSHA compliance regulations by specific companies throughout the U.S.;"
    e. Failing to attend the meeting with the U.S. Probation Officer in connections with the PSI;
    f. Failing to gather "testimonial briefs and other mitigating evidence;" and
    g. Failing to inform him that his guilty plea would result in immediate detention.

11. Ineffective assistance of counsel by Stephens for:

    a. Turning his sentencing over to a part-time attorney who missed critical meetings;
    b. Submitting a sentencing brief "rife with error" and representing that he could afford $30,000-$40,000 worth of counseling, resulting in a $25,000 fine; and

12. He was denied his right of direct appeal due to the intimidating behavior of Lyons and his lack of awareness that he had waived his appellate rights.

13. Ineffective assistance of counsel (sentencing) by Jones through "failure to exercise due diligence.

### III. Analysis

In the plea agreement, Jameson expressly waived "the right to collaterally attack the conviction and sentence pursuant to 28 U.S.C. § 2255, except for claims based on ineffective assistance of counsel which challenge the validity of the guilty plea or this waiver." [Dkt. #22, Plea Agreement, § 3].

A waiver of collateral attack rights under § 2255 is generally enforceable where the waiver is expressly stated in the plea agreement and where both the plea and waiver were knowingly and voluntarily made. *United States v. Cockerham,* 237 F.3d 1179, 1183 (10th Cir. 2001). Thus, a waiver of the right to bring a collateral attack will be enforced if (1) the

collateral attack falls within the scope of the waiver of appellate rights; (2) the defendant knowingly and voluntarily waived his right to collateral review; and (3) enforcing the waiver would not result in a miscarriage of justice. *United States v. Morrison,* 415 F. App'x 860, 862 (10th Cir. Jan. 31, 2011) (unpublished); *United States v. Polly,* 630 F.3d 991, 1001 (10th Cir. 2011).

A plea agreement waiver of post-conviction rights does not waive the right to bring a § 2255 petition based on ineffective assistance of counsel claims challenging the validity of the plea or the waiver. *Cockerman,* 237 F.3d at 1187.

### A. Grounds 1-2 and 6-8

#### 1. Whether Grounds Involve Rights Subject to Waiver

Grounds 1(allocution rights), 2 (length of sentence), 6 (enhancements to guideline level), 7 (subsequent change in guidelines) and 8 (flawed guidelines) are collateral attacks on plaintiff's conviction and sentence, but do not allege ineffective assistance of counsel in any form. Therefore, each of these grounds is subject to Jameson's waiver.

#### 2. Whether Jameson's Plea was Knowingly and Voluntarily Made

Jameson pleaded guilty to the indictment pursuant to a conditional plea agreement with the government that reserved his right to appeal the court's denial of is motion to suppress. [Dkt. #22]. The plea agreement stated that defendant "knowingly and voluntarily" agreed to waive, *inter alia,* "the right to collaterally attack the conviction and sentence pursuant to 28 U.S.C. § 2255, except for claims based on ineffective assistance of counsel which challenge the validity of the guilty plea or this waiver." [*Id.* at 3] Additionally, the plea colloquy demonstrates Jameson understood the nature of the charge against him and the consequences of his decision to plead guilty, including waiver of his right to collaterally attack the conviction and sentence under §

2255, except for claims of ineffective assistance of counsel which challenge the validity of the guilty plea or the waiver of post-conviction rights, and that he was voluntarily agreeing to enter a guilty plea. The record supports a conclusion that Jameson's plea was knowingly and voluntarily made.

### 3. Whether Enforcement of Waiver Would Result in Miscarriage of Justice

Jameson has not articulated, nor can the court identify, any reason enforcement of his waiver would result in a miscarriage of justice.

Therefore, the court concludes grounds 1-2 and 6-8 are barred by Jameson's waiver of his right to collaterally attack his conviction and sentence under 28 U.S.C. § 2255.[1]

### B. "Ineffective Assistance of Counsel" Claims

In Grounds 3-5 and Grounds 10-11, Jameson explicitly alleges ineffective assistance of counsel. However, none of the allegations of Grounds 3, 4 or 11 relate to the validity of the plea or the waiver. In Ground 5, Jameson contends Lyons failed to properly challenge the government's motion that he be immediately taken into custody after entering his guilty plea. Ground 10 lists seven ways in which Jameson contends Lyons was ineffective. Only Grounds 10b (failure to discuss applicable sentencing guidelines with Jameson) and 10g (failure to inform Jameson that his guilty plea would result in immediate detention) relate to the validity of the plea or the waiver.

In Ground 9 (alleging Lyons "unlawfully induced" him to plead guilty by telling him to sign the plea agreement without reading it) and Ground 12 (alleging Lyons intimidated him and

---

[1] The court notes, additionally, that Jameson 's assertion that sentence was imposed before he was afforded his right to speak is incorrect. The transcript from the sentencing reflects that while the court denied defendant's motion for variance before giving him an opportunity to make a statement, the court permitted Jameson to speak *before* sentence was imposed. *See* Fed.R.Crim.P. 32(i)(4)(A)(ii).

he did not know he had waived his appellate rights), Jameson does not explicitly allege ineffective assistance of counsel, but both grounds appear to be based on alleged ineffectiveness of counsel related to the validity of the plea and/or waiver.

Thus, before the court for review are Jameson's claims of ineffective assistance of counsel as to five issues:

1. Alleged failure by Lyons to discuss sentencing guidelines with Jameson (Ground 10b);

2. Alleged failure by Lyons to inform him that his guilty plea would result in immediate detention (Ground 10g);

3. Alleged failure by Lyons to properly object to the government's request that Jameson be immediately detained upon entry of his guilty plea (Ground 5);

4. Alleged instruction by Lyons to sign the plea agreement without reading it (Ground 9); and

5. Alleged "intimidating behavior" by Lyons and lack of awareness that he had waived his appellate rights (Ground 12).

To establish ineffective assistance of counsel under *Strickland v. Washington,* 466 U.S. 668 (1984), Jameson must demonstrate: (1) that his counsel was deficient such that he was deprived of "reasonably effective assistance," which requires a showing that counsel's representation fell below an "objective standard of reasonableness," and (2) that counsel's deficient performance prejudiced his case, meaning that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 687-88, 694.

Judicial scrutiny of counsel's performance must be highly deferential. *Id.* at 689. In addressing an ineffectiveness claim, a court "must judge the reasonableness of counsel's challenged conduct," and determine whether, in light of all the circumstances, the acts and omissions identified by the defendant were "outside the wide range of professionally competent assistance." *Id.* at 690. In so doing, the court "should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable judgment." *Id.*

Further, while a pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers, it is not the proper function of the court to assume the role of advocate for him. *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). The court is not required to fashion defendant's arguments for him where his allegations are merely conclusory in nature and without supporting factual bases. *United States v. Fisher,* 38 F.3d 1144, 1147 (10th Cir. 1994). Thus, conclusory allegations without supporting facts are insufficient to state a claim on which relief can be based. *Hall,* 935 F.2d at 1110.

### 1. Discussion of Guidelines

Jameson alleges Lyons failed to discuss the sentencing guidelines with him prior to his change of plea and waiver. The record directly contradicts this allegation. In the Petition to Enter Plea of Guilty, Jameson acknowledged his attorney had discussed the sentencing guidelines with him. [Dkt. #21 at 4-5]. At the change of plea hearing, he affirmed that Lyons had talked with him about the advisory sentencing guidelines and how they might apply to his case. [Dkt. #34, Transcript, 12:4-11]. Further, in response to the court's questions, Jameson confirmed that he understood the court would not determine the sentence until after a presentence report; that both he and the government would be able to challenge the reported facts

and the application of the guidelines recommended by the probation officer, and that the sentence imposed might be different from any estimate Lyons had given to him. [*Id.,* 12:12-19]. He confirmed he understood the court could impose any reasonable sentence not greater than the statutory maximum and with regard to the sentencing guideline, not less than the statutory minimum. [*Id.*, 12:20-13:1]. He stated that he understood the court in the exercise of its discretion under the Supreme Court decisions would consult and take into account the provisions of the sentencing guidelines, [*id.,* 13:2-6], and unless the court in its discretion found a legally sufficient basis to depart from the guidelines range of the Sentencing Commission or to impose a non-guideline sentence, the court might impose a sentence within the guideline range. [*Id.,* 13:7-12].[2]

Jameson's conclusory allegation that counsel did not discuss with him the advisory sentencing guidelines is contradicted by the record.

**2. Failure to Inform Defendant that Guilty Plea Would Result in Immediate Detention**

After Jameson initially entered his guilty plea on June 20, 2008, counsel for the government, Clinton J. Johnson, moved pursuant to 18 U.S.C. § 3143(a)(2) and 18 U.S.C. § 3142(f)(1)(E) ("any felony that is not otherwise a crime of violence that involves a minor

---

[2] The government has submitted the affidavit of Lyons. [Dkt. #82, Ex. A, Lyons Affidavit]. In his affidavit, Lyons states:

> I had numerous discussions with Mr. Jameson prior to his plea about the sentencing guidelines. … [H]e and I discussed relevant conduct regarding the types and number of images that ended up being stipulated to in the plea agreement and the fact that if Mr. Jameson went to trial, he would be denied the three points for acceptance of responsibility, and the number of pornographic images on his computer would be far higher than what we could stipulate to, and these situations would add a great deal of time to the sentence he could otherwise negotiate for.

[*Id.*, ¶9]. Additionally, Lyons stated he met with Jameson at his office on June 19, 2008 to review the proposed plea agreement and "went over it in great detail." [*Id.*, ¶7].

13

victim…") that defendant be immediately taken into custody. [Dkt. #34, Transcript at 32:8-12]. Lyons objected and told the court the government had not advised him it intended to seek detention of Jameson pending sentencing. [*Id.,* 32:12-21]. The court advised Lyons he was likely to find the statutory conditions for release pending sentencing had not been fulfilled. [*Id.,* 35:7-12]. As a result, the court, on the basis of an agreement between counsel, withdrew its finding of guilt and deferred its finding for 17 days, until July 7, 2008, in order to give Lyons an opportunity to review the applicable law and to allow Jameson to "get his affairs in in order" [*Id.,* 38: 5-40:6]. On July 7, Lyons moved for release of Jameson pending sentencing under 18 U.S.C. § 3145(c), asserting exceptional reasons why detention would not be appropriate. [Dkt. ##27, 35, Transcript, July 7, 2008, 5-14]. The court denied the motion [Dkt. ##29, 35], entered an order finding defendant guilty based on his change of plea [Dkt. #28], and remanded Jameson to the custody of the U.S. Marshal pending sentencing. [Dkt. ##29, 35]. As previously noted, Jameson was sentenced to 70 months imprisonment.

The government asserts Jameson's claim does not relate to either entry of the plea or the waiver. The court agrees. Nothing in the record indicates Jameson would have made a different plea if he had been aware that he would be subject to presentencing detention. *See Cockerham,* 237 F.3d at 1188. Additionally, the court rejects Jameson's claim that Lyons was ineffective for failing to advise him before the change of plea that he would immediately be taken into custody. Lyons was unaware the government would move for immediate detention. The court withdrew its finding of guilt on June 20, 2008. Defendant remained free until July 7, 2008, when the court denied the motion for release, finding Jameson was not entitled to an exception to 18 U.S.C. § 3143(a)(2). Ultimately, Jameson was sentenced to 70 months in prison. He received credit for the time he spent in custody presentencing.

14

### 3. Failure to Properly Object to Defendant's Immediate Detention

Jameson also argues Lyons' alleged failed to properly object to the government's motion for immediate detention after entry of his plea. As with Lyons' alleged failure to advise defendant the government would seek presentence detention, this claim does not relate to either entry of the plea or the waiver.

Additionally, Lyons filed a Motion for Release Pending Sentencing [Dkt. #27], in which he argued that release pending sentence was appropriate under 18 U.S.C. § 3145(c), which provides in pertinent part: "A person subject to detention pursuant to section 3143(a)(2) . . . who meets the conditions set forth in section 3143(a)(1) . . . may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate." Lyons cited *United States v. Wages,* 271 Fed. Appx. 726 (10th Cir. 2008), an unpublished opinion involving release pending sentencing of a defendant charged with possession of child pornography. The Tenth Circuit noted in that decision that the defendant's conviction is statutorily classified as a "crime of violence" and thus initially is governed by § 3143(a)(2), which imposes a presumption of detention unless certain conditions are met. There, as in this case, the district court concluded defendant had not demonstrated "exceptional reasons."

Jameson argues that since the Federal Bureau of Prisons classified him as a non-violent offender, his offense should not have been considered a "crime of violence" for purposes of pre-sentence release. Jameson's reliance on his Bureau of Prisons classification is misplaced. A "non-violent offender" classification of a defendant for purposes of prison assignment is not interchangeable with the provisions of 18 U.S.C. §§ 3143(a)(2) and 3142(f)(1)(E). The former is an administrative/regulatory device used to determine where a prisoner will be placed; the latter

is a statutory mandate for presentencing detention of defendants who have entered a plea of guilty to charges of possession of child pornography absent "exceptional reasons."

Although defendant's Motion for Release Pending Sentencing was denied, Lyons competently briefed and argued the motion.

**4. Alleged Instruction by Lyons to Jameson to Sign Plea Agreement Without Reading It**

Jameson contends in Ground Nine of his motion that with regard to the plea agreement, Lyons told him, "Take all the time you need to read this. But actually, we don't have much time. So read this quickly, sign it, and let me take these two items from you without reading." [Dkt. #59 at 14]. Additionally, he complains that the agreement did not include any provision for a sentencing recommendation by the government. Finally, he asserts that much of the information in the plea agreement was inaccurate and not factual, and when he expressed "extreme concern" about the inaccuracy, Lyons "responded with hostility and threatened that if [Jameson] did not move forward on the Plea Agreement, he would allow the prosecutor to unleash her wrath on [Jameson]." [Dkt. #59 at 14].

The record, however, belies these allegations. Jameson testified at the change of plea hearing that he had read and discussed the plea agreement with Lyons before he signed it [Dkt. #34, Transcript, 9:2-4], that the plea agreement represented in its entirety any understanding he had with the government [*id.,* 9:5-7], that he understood the terms of the plea agreement and that the essential terms had been stated accurately on the record by Lyons. [*Id.,* 9:8-13]. Furthermore, Jameson initialed every page of the Plea Agreement, signed the section on

16

appellate and Post-Conviction Waiver, and signed the Plea Agreement itself. [Dkt. #22].[3]

Jameson's conclusory allegations are not supported by the record.

### 5. Alleged "Intimidating Behavior" by Lyons/ Lack of Awareness of Waiver of Appellate Rights

Jameson contends, "[B]ecause of the intimidating behavior demonstrated by [Jameson's] attorney leading up to and during the Plea Hearing…[Jameson] was denied his right to directly appeal his sentence, as he was unaware that he had signed this important constitutionally-guaranteed right away in the Plea Agreement."

The Plea Agreement and change of plea colloquy contradict this allegation. In § 3 of the Plea Agreement, Jameson expressly stated that he "knowingly and voluntarily" agreed to waive the right to directly appeal the conviction and sentence and the right to collaterally attack the conviction and sentence pursuant to 28 U.S.C. § 2255, except for claims based on ineffective assistance of counsel which challenge the validity of the guilty plea or waiver. [Dkt. #22, § 3]. As previously noted, Jameson stated in the Plea Agreement that "counsel has explained his appellate and post-conviction rights; that defendant understands his rights; and that defendant knowingly and voluntarily waives those rights as set forth above, with the exception of the issue for which he has reserved his right to appeal." [*Id.*]. Further, during the change of plea hearing, Jameson told the court he understood he had waived these rights, [Dkt. #34 at 14:1-15:2].

---

[3] Lyons, in his affidavit, stated that he met with Jameson in his office on June 19, 2008, to review the proposed plea agreement, and he and Jameson went over it in great detail. [Dkt. #82, Ex. A, Lyons Affid., ¶7]. In response to Jameson's allegation that when he confronted him with his belief that the plea agreement had inaccurate information in it, Lyons responded with hostility and threatened to allow the prosecutor to unleash her wrath on Jameson, Lyons states the allegations are "the patently false delusions of a man who continued to believe for the entire time I represented him that he would get probation just because he was the head of a nominally big business, with lots of employees, whose lives and futures depended entirely on him running the companies." [*Id.*].

17

The court rejects Jameson's conclusory allegation that due to intimidating behavior by his attorney, he was unaware he had waived his right to directly appeal his sentence.

## IV. Conclusion

For the reasons set forth above, Jameson's Motion to Vacate, Set Aside or Correct Sentence [Dkt. #59] is denied.

ENTERED this 30th day of January, 2012.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma